## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STACEY W. BRACKENS,    ) | |
| ) | |
| Plaintiff,    ) | **CIVIL ACTION** |
| ) | |
| v.    ) | No.   06-1205-MLB |
| ) | |
| J. ENTERPRISES, INC. d/b/a    ) | |
| COLORTYME,    ) | |
| Defendant.    ) | |
| _____) | |

<u>**MEMORANDUM AND ORDER**</u>

Before the court are the following:

1.   Defendant's motion to dismiss and memoranda in support (Docs. 12, 13, 22);

2,   Plaintiff's Answer to Defendants' Motion to Dismiss (Doc. 16); and

3.   Defendant's reply (Doc. 17).

**I.   INTRODUCTION**

Since 2002, plaintiff has filed 14 cases in this court, six of which were filed in 2006.[1]   This case was originally filed in the

---

[1]<u>Brackens et al. v. McClellan et al.</u>, Case No. 06-1166 is the latest in a series of cases Brackens has filed against Amy McClellan, who was described by the Tenth Circuit as "Mr. Brackens's next-door neighbor with whom he and his wife have been feuding for over three years." <u>Brackens v. Best Cabs, Inc.</u>, 151 Fed. Appx. 659 (10th Cir. 2005).   <u>Brackens v. Stewart and Brackens</u>, Case No. 06-2241, purports to be a suit over a will.   <u>Brackens v. Texas Health and Human Services Commission</u>, Case No. 06-2320, purports to be an ADA and civil rights action alleging harassment, selective prosecution, public humiliation and breach of contract.   <u>Brackens v. Shield</u>, Case No. 06-2405, purports to be a medical negligence case.   <u>Brackens v. Best Cabs</u>, Case No. 06-1283, dismissed by Memorandum and Order filed October 24, 2006.

Although the cases involve different parties and factual scenarios, each complaint features a rambling recitation of claims similar in tone, if not content, to those in this case.   With the exception of this case, Brackens was granted permission to proceed in forma pauperis status in his cases filed in this court last year.

Western District of Texas, Austin division. Judge Lee Yeakel transferred the case to this district on defendant's motion.

Defendant's complaint initially stated a class action claim. Plaintiff, however, filed a voluntary motion to dismiss the class action claim.[2] (Doc. 15). Defendant filed this motion to dismiss plaintiff's individual claims.

**A.   <u>Pro Se</u> Status**

Before analyzing defendant's motion to dismiss, the court notes that plaintiff is not represented by counsel. It has long been the rule that <u>pro se</u> pleadings must be liberally construed. See <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); <u>Hill v. Corrections Corp. of America</u>, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). Liberal construction does not, however, require this court to assume the role of advocate for the <u>pro se</u> litigant. See <u>Hall</u>, 935 F.2d at 1110. Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See <u>id.</u>; <u>Hill</u>, 14 F. Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding the alleged injuries. See <u>Hill</u>, 14 F. Supp.2d at 1237. In the end, plaintiff's <u>pro se</u> status, in and of itself, does not prevent this court from dismissing his claim. <u>See</u>

_____

Plaintiff has also filed a case in the Western District of Texas. <u>Brackens v. Big Lots, Inc.</u>, Case No. 06-532 purports to be a race discrimination claim against Big Lots for refusing to accept plaintiff's allegedly good check.

[2] Plaintiff's motion to voluntarily dismiss his class action claim is granted.

Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110, 1114 (10th Cir.1991)) ("Even when a complaint is construed liberally, this court has dismissed pro se complaints for failure to allege sufficient facts."); Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

**B.   Motion to Dismiss Standards: FRCP 12(b)(6)**

The standards this court must utilize upon a motion to dismiss are well known.  This court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive.  See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000); Robinson v. Kansas, 117 F. Supp.2d 1124, 1129 (D. Kan. 2000).  All well-pleaded facts and  the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff.  See Ford, 222 F.3d at 771; Davis v. United Student Aid Funds, Inc., 45 F. Supp.2d 1104, 1106 (D. Kan. 1998). Conclusory allegations, however, have no bearing upon this court's consideration.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"); Overton v. United States, 74 F. Supp. 2d 1034, 1041 (D. N.M. 1999) (citing Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989)). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims.  See Robinson, 117 F. Supp.2d at 1129.

**II.  FACTS**

Plaintiff Stacey Brackens, a resident of Texas, brings this

-3-

action against defendant Colortyme for events that occurred while plaintiff resided in Wichita, Kansas. Plaintiff has asserted the following claims against defendant: "<u>Title VII of the Civil Rights Act of 1964</u>, 42 U.S.C. *–2000e et seg.* based on Race or sex, also <u>Breech of contract</u>, <u>Extortion/Strong Arming</u>, and <u>monies owed</u>, <u>Unprofessional Conduct, Causing Public, humiliation</u> and <u>mental anguish</u>." (Doc. 1 at 1-2)(emphasis in original).[3]

Plaintiff rented both a dinette and a bed from Colortyme. Plaintiff's contract with Colortyme required plaintiff to make monthly payments. On November 2, 2005, plaintiff entered Colortyme to make his monthly payment. Plaintiff informed Sy, the manager of Colortyme, that plaintiff was moving to Austin, Texas. Sy stated that plaintiff could continue to make payments from Texas. Plaintiff told Sy that he would do so. On November 26, 2005, plaintiff called Sy to ask him to send a truck to plaintiff's home and pick up the bed because he was only going to take the dinette to Texas. Thirty minutes later, the truck came to plaintiff's home. At that time, the movers called Sy who informed plaintiff that Colortyme wanted both the bed and the dinette. Plaintiff told Sy over the phone that he did not want the dinette removed since he had been paying for the dinette for more than a year.

Sy went to plaintiff's home to talk to plaintiff. Plaintiff became angry and both plaintiff and Sy were yelling outside of plaintiff's home. Plaintiff demanded that Sy and the movers leave,

---

[3] Plaintiff has also stated a claim against Colortyme for "DIVERSITY OF CIZENSHIP [sic]." Diversity of citizenship is not a cause of action but rather a basis for jurisdiction in the federal courts.

but Sy kept asking for the dinette.  Plaintiff refused to part with the dinette and Sy called the police.  Sy allegedly told plaintiff that he would have plaintiff's car impounded unless plaintiff gave him the dinette.  Sy also stated that he would drop charges against plaintiff for threatening Sy with a gun if plaintiff allowed him to remove the dinette.[4]  Plaintiff then requested that Sy return the bed to plaintiff.[5]  Sy refused.

Plaintiff alleges that Colortyme discriminated against him on the basis of plaintiff's race, African-American, and that Colortyme breached its contract with plaintiff.  Plaintiff also alleges extortion, unprofessional conduct, public humiliation and mental anguish.  Defendant seeks to dismiss several of plaintiff's claims.[6]

**III. ANALYSIS**

   **A.   Title VII**

Plaintiff has asserted a claim against Colortyme for violation of his rights pursuant to 42 U.S.C. § 2000e.  Title VII is only implicated when an employer violates an individual's rights by its employment practices.  <u>See</u> 42 U.S.C. § 2000e-2.  Plaintiff has failed to allege that Colortyme's actions were taken with respect to its employment practices.  Moreover, a party bringing suit under Title VII is required to first file a charge with the EEOC.  <u>Archuleta v. Colorado Dep't of Insts.</u>, 936 F.2d 483, 488 (10th Cir. 1991).

---

[4] Plaintiff also alleges that he never threatened Sy with a gun.

[5] Plaintiff's payment on November 2 allegedly covered the rental of both the dinette and bed until December 2.

[6] At this time, defendant has not moved to dismiss plaintiff's breach of contract claim.

According to the pleadings in this case, plaintiff has not filed a charge with the EEOC pursuant to 42 U.S.C. § 2000e.

The court finds that plaintiff has failed to state a Title VII claim against Colortyme.

Since the court is required to liberally construe plaintiff's complaint, the court will consider whether plaintiff has sufficiently stated a claim for race discrimination pursuant to any other federal statute.[7]  To establish a prima facie case of discrimination under 42 U.S.C. § 1981, plaintiff must show: (1) he is a member of a protected class; (2) that defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981.  Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1101-02 (10th Cir. 2001).

Plaintiff has alleged that he is a member of a protected class. Plaintiff has also alleged that he had a contract with Colortyme and

---

[7] The court notes that the Tenth Circuit has not clearly stated whether its mandate that the court construe the pleadings liberally requires the court to identify all potential claims made by pro se plaintiffs.  After extensive research, the court discovered two unpublished decisions by the Tenth Circuit.  In BigLeggins v. General Elec. Co., 1996 WL 185746 (10th Cir. Apr. 18, 1996), the court noted that the plaintiff "did not identify the specific constitutional or statutory provisions under which he sought relief.  The district court construed his pleadings liberally and properly determined that Mr. BigLeggins had asserted claims under 42 U.S.C §§ 2000e et seq. (Title VII), 42 U.S.C. § 1981, and state law."  More recently, however, in Riggs v. American Heritage Life Ins. Co., 2003 WL 723956 (10th Cir. Mar. 4, 2003), the district court did not attempt to construe plaintiff's pleadings beyond the stated Title VII claim.  The Riggs panel noted that the plaintiff argued that her complaint stated a section 1981 claim.  The Riggs court refused to consider that argument because plaintiff did not raise it at the district court level.

The court did not find a published opinion that directly speaks to this issue.  Therefore, out of an abundance of caution, this court will evaluate plaintiff's allegations under section 1981.

Colortyme breached the contract.  Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b).  The remaining questions are whether Colortyme had the intent to discriminate on the basis of race, and whether that discrimination interfered with the termination of their contract.

Plaintiff's allegations concerning these issues are as follows:

37.  If this case where to be judged on it's face, these are things that must be considered.
(a) Colortyme had nothing in which to base my not paying on.
(b) Mr. Sy the manager of that Colortym is white, and I the plaintiff am a black man.
(c) If I where white we would not even be hear.
(d) This case is clearly racially based, and nothing else.

\*\*\*

(J) Colortyme broke the contract in a numbers of ways 1) when I asked for my sons bed back since it wasn't on the truck it was still mine and they should have given it back.

\*\*\*

(L) They broke the contract when they lied, when they refused to leave my property, when they made a big public seen, as well as the many of threats that they made to me, like call U-haul to find out where I was moving too, just to name one.

(Doc. 1 at 5-6)(mistakes in original).

Plaintiff has failed to allege that Colortyme's actions in terminating the contract were motivated by discrimination. Plaintiff's allegations that the case is "racially based" and that "we would not even be hear [sic]" if plaintiff was "white" are conclusory and not supported by the factual allegations.  Even though the court

-7-

must liberally construe plaintiff's allegations, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." <u>Northington v. Jackson</u>, 973 F.2d 1518, 1521 (10th Cir. 1992)(citing <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1992).

Accordingly, the court finds that plaintiff has failed to state a claim under section 1981.

### B.   State Claims

Plaintiff asserts claims against defendant for "EXTORTION & STRONG ARMING, 5a) MONIES OWED, 6a) UNPROFESSIONAL CONDUCT CAUSING PUBLIC HUMILIATION AND MENTAL ANGUISH." (Doc. 1 at 7).

These causes of action do not exist under Kansas state law.[8] Liberally construed, plaintiff appears to be making either a claim for negligent infliction of emotional distress and/or intentional infliction of emotional distress.

Under Kansas law a claim for negligent infliction of emotional distress requires a showing of a negligent act that was accompanied by or resulted in physical injury. <u>Humes v. Clinton</u>, 246 Kan. 590, 598, 792 P.2d 1032 (1990) (citing cases). The physical injury must occur contemporaneously with or shortly after the incident causing the emotional distress. <u>Payne v. General Motors Corp.</u>, 731 F. Supp. 1465, 1474 (D. Kan. 1990). Plaintiff has failed to allege that he sustained any physical injury as a result of Colortyme's actions. Plaintiff has therefore failed to state a claim for negligent infliction of

---

[8] The cause of action for "monies owed" appears to be a request for damages from Colortyme's alleged contract breach and not a separate cause of action.

emotional distress under Kansas law.

In order to state a claim for intentional infliction of emotional distress, the court must determine: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." Roberts v. Saylor, 230 Kan. 289, 292-293, 637 P.2d 1175 (1981). Conduct is sufficient to satisfy this test when it is so outrageous and extreme in degree "as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Fusaro v. First Family Mortgage Corp., 257 Kan. 794, 805, 897 P.2d 123 (1995). Kansas courts have repeatedly stated that liability may be found when "the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'" Id.

The court not need to determine whether plaintiff's allegations regarding Colortyme's actions rise to the level of conduct that is extreme and outrageous since plaintiff has wholeheartedly failed to allege that he has suffered extreme emotional distress. Plaintiff has only alleged that he was embarrassed. Embarrassment does not rise to the level of extreme emotional distress. Taking plaintiff's allegations as true and construing the allegations in the light most favorable to plaintiff, the court cannot conclude that plaintiff has stated a claim for negligent infliction of emotional distress.

**C.  Breach of Contract**

On January 22, 2007, defendant submitted a supplemental

-9-

memorandum in support of its motion for judgment on the pleadings. (Doc. 22). In its supplemental memorandum, defendant asserts that plaintiff's claim for breach of contract, standing alone, fails to meet the $75,000 amount in controversy threshold required for diversity jurisdiction. As of February 27, plaintiff has not replied to defendant's supplemental memorandum. In reviewing plaintiff's complaint and the lease agreement executed by the parties, the court is also concerned about the survivability of plaintiff's claim.

In order to state a claim for breach of contract in Kansas, plaintiff must allege "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." Britvic Soft Drinks Ltd. v. Acsis Techs., Inc., 265 F. Supp.2d 1179, 1187 (D. Kan. 2003). According to plaintiff's complaint, defendant breached the lease agreement by taking possession of the dinette after allegedly orally agreeing to allow plaintiff to transport the dinette to Texas. The lease agreement, however, states that the dinette may not be removed from plaintiff's address in Kansas unless the parties have executed a written agreement. Plaintiff does not allege the existence of such an agreement. The lease agreement also provides that defendant can terminate the agreement when plaintiff has breached any provision of the agreement. According to the complaint, plaintiff was in the process of moving to Texas at the time defendant's employees removed the dinette from plaintiff's residence. In the absence of a written agreement allowing the move, it would seem that defendant was within its rights to terminate the

agreement.  Based on these concerns, the court will reserve ruling on the motion to dismiss the breach of contract claim until both parties have had an opportunity to address these issues in supplemental briefing.[9]  Both parties must file their submissions by 5:00 p.m. on March 20.  The parties may both file responses by 5:00 p.m. on April 3.  Plaintiff must respond to defendant's supplemental memorandum by March 20.  If he does not, the supplemental memorandum will be treated as uncontested pursuant to this court's Rule 7.4.

## IV.  CONCLUSION

Defendant's motion to dismiss (Doc. 12) is granted in part and denied in part.  Plaintiff's claims, with the exception of the claim for breach of contract, are dismissed, without prejudice.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion

---

[9] The court would also like both parties to address whether plaintiff has established subject matter jurisdiction.  While the court must consider if the amount is met at the time of the filing of the complaint, see Watson v. Blankinship, 20 F.3d 383, 387 (10th Cir. 1994), the court is concerned that plaintiff's claims, arising out of a dispute over a $1000 dinette, would exceed $75,000.

shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  27th  </u> day of February 2007, at Wichita, Kansas.

<u>s/ Monti Belot                        </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE